Case 2:23-cv-00148  Document 23  Filed on 09/13/24 in TXSD  Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
September 13, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MARTIN LAVELL MOMOH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00148 |
| | § | |
| J. CARRASCO, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

In June 2023, Plaintiff Martin Lavell Momoh filed this civil rights action under 42 U.S.C. § 1983 against Texas Highway Patrol Trooper Justin Carrasco (D.E. 1). Momoh alleges that his Fourth and Fourteenth Amendment rights were violated when Carrasco conducted a traffic stop and searched Momoh's car. Carrasco has filed a motion for summary judgment claiming qualified immunity, to which Momoh has not responded. (D.E. 18). For the reasons discussed further below, it is recommended that Carrasco's motion for summary judgment (D.E. 18) be **GRANTED** and this cause of action be **DISMISSED**.

### I.  BACKGROUND

*a.  Complaint*

Momoh alleges the following in his complaint. (D.E. 1, 1-1). Carrasco racially profiled him and violated his Fourth Amendment rights by conducting a traffic stop and an unreasonable search of his car solely because Momoh was black. (D.E. 1 at 3-4).

Specifically, Momoh alleges that Carrasco pulled him over because his car did not have the window label required for his window tint. (D.E. 1-1 at 2-3). However, the car is in compliance with the transportation code, and Carrasco instead pulled him over because Momoh was a black man driving a luxury car. (*Id.* at 3). Although Carrasco stated that he found loose marijuana in the car, he did not issue any ticket or warning on that basis, and his search of the car was unreasonable. (*Id.* at 4). The search damaged a sensor on Momoh's car that he had to replace at a cost of $650. (*Id.* at 5). The search also damaged a touchscreen stereo, a button that controlled the air conditioning, and the spring latch to the hood. (*Id.*). Momoh suffered pain and suffering from standing outside his car during the search and having passersby observe him, and is now in fear of being pulled over again. (*Id.* at 6). Momoh seeks monetary damages. (*Id.*).

  b. *Summary Judgment Evidence*

Trooper Carrasco's body camera footage shows the following. (D.E. 18-1). Carrasco conducts a traffic stop on Momoh. (*Id.* at 0:00-0:28). Carrasco states that the reason for the stop is that Momoh does not have a window compliance sticker. (*Id.* at 0:34-0:39). Carrasco also indicates annoyance at how abruptly Momoh stopped. (*Id.* at 0:40-0:42). Momoh does not respond to either of these issues and only asks whether Carrasco wants his license and registration. (*Id.* at 0:28-0:53). After checking Momoh's license and registration, Carrasco asks Momoh to exit the car and discuss the issue between their vehicles. (*Id.* at 2:06-2:09). Carrasco attempts to ask Momoh how long he was in Houston and where he is going, but Momoh responds that he will not answer questions. (*Id.* at 3:27-

3:33). Carrasco asks if Momoh has ever been in trouble with the law, and Momoh responds that he has been "for anything you can name." (*Id.* at 4:07-4:15). After returning to his car, Carrasco requests that another officer come to the scene. (*Id.* at 8:10-8:25). When the other officer arrives, Carrasco informs him that Momoh has been moving back and forth and has money all over the car. (*Id.* at 12:22-12:25). Carrasco asks Momoh for consent to search the vehicle, which Momoh denies. (*Id.* at 12:50-12:53).

At this point, Carrasco retrieves his police dog and proceeds to direct the dog around Momoh's car for inspection. (*Id.* at 13:30-16:10). The dog became agitated around the back of the car. (*Id.* at 15:23-15:54). After putting the dog back in his car, Carrasco proceeds to conduct a search of the inside of Momoh's vehicle. (*Id.* at 17:10-31:32). During the search, Carrasco notes to another officer that Momoh has been arrested over 15 times, including for possessing significant amounts of marijuana. (*Id.* at 25:40-25:42). After completing the search, Carrasco tells Momoh that there is loose marijuana inside his car, which Momoh denies. (*Id.* at 31:34-31:38). Carrasco states that he is going to give Momoh a warning. (*Id.* at 31:52-31:55). Carrasco returns to his vehicle and then gives Momoh a warning. (*Id.* at 32:27-35:25).

Trooper Carrasco's ticket report indicated the following. (D.E. 18-3). He conducted the traffic stop on Momoh due to a violation of Tex. Transp. Code § 547.609 for use of a sunscreening device without the required label. (*Id.* at 5-7). Carrasco issued a warning for this offense. (*Id.* at 9).

3

Trooper Carrasco's canine report indicated the following. (D.E. 18-2). He conducted the traffic stop on Momoh due to a violation of Tex. Transp. Code § 547.609 for use of a sunscreening device without the required label. (*Id.* at 4). During the canine inspection, a cursory pass began at the front left of the car. (*Id.* at 7). The canine made an aggressive head turn near the rear driver's side door and then continued the cursory pass. A detailed pass then began at the front left of the car, and the canine finalized the pass by aggressively biting her leash in the rear bumper area. Carrasco then conducted a detailed search, which showed marijuana residue on the center console. (*Id.*). This report is consistent with Carrasco's body cam footage. (*See generally* D.E. 18-1).

## II. DISCUSSION

### a. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* The Court must view the facts in the

light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Salazar-Limon v. City of Houston*, 826 F.3d 272, 274-75 (5th Cir. 2016). In doing so, the Court can credit "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

    *b. Analysis*

In his motion for summary judgment, Carrasco argues that he is entitled to qualified immunity on Momoh's claims because the evidence shows that he did not violate Momoh's constitutional rights and, regardless, did not do so in a way that was clearly established by law. (D.E. 18 at 4-6). As to Momoh's racial profiling claim, Carrasco argues that Momoh's complaint alleges only a conclusory accusation of racial profiling, but provides no factual support. (*Id.* at 7). Instead, Carrasco contends that the evidence shows that

Momoh was subject to a legitimate traffic stop and reasonable investigatory detention. (*Id.*). As to the search, Carrasco first argues that the traffic stop was appropriate from its inception because Momoh's windows were tinted and the car did not display the proper label. (*Id.* at 9). Next, Carrasco asserts that he had reasonable suspicion to conduct additional investigation based on several factors, including Momoh abruptly stopping short at the start of the traffic stop, being unable or unwilling to engage on any topic other than his license and registration, having piles of loose cash in the passenger's seat, admitting that he had a significant legal history, and having been arrested 15 times. (*Id.* at 9-11). Finally, Carrasco contends that Momoh has not shown that any unconstitutional act was contrary to clearly established law. (*Id.* at 11-12).

Momoh has not filed a response.

"[E]valuating qualified immunity is a two-step process, and the burden is on the plaintiff to prove that a government official is not entitled to qualified immunity." *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013). First, the court must "determine whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right." *Id.* "A right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotation marks omitted). "If the first step is met (i.e. the official's conduct violates an established right), the second step is to determine whether the defendant's conduct was objectively reasonable." *Id.* at 503. The court may address either prong first depending on the circumstances of the case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is only "clearly established" when "the law so clearly and unambiguously prohibited the conduct that *every* reasonable official would understand that what he is doing violates the law." *Id.* (emphasis in original). This is a high bar, and "[w]hen there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity." *Wyatt*, 718 F.3d at 503. The "clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019).

Under the Equal Protection Clause of the Fourteenth Amendment, "the Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). To state a claim of racial discrimination under the Equal Protection Clause and section 1983, a plaintiff must show: (1) that he "received treatment different from that received by similarly situated individuals;" and (2) "that the unequal treatment stemmed from a discriminatory intent." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012). The plaintiff's allegations must provide more than merely "labels and conclusions" to state a plausible claim for relief, and in the context of a claim of racial profiling, the plaintiff must allege some substantiating facts. *Id.*; *Bermea v. City of Harlingen, Texas*, No. 1:18-CV-149, 2019 WL 13190655, at *3 (S.D. Tex. Jan. 10, 2019).

"The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). Under the standard established in *Terry v. Ohio*, 392 U.S. 1 (1968), "the legality of

7

police investigatory stops is tested in two parts. Courts first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Brigham*, 382 F.3d at 506. "Authority for the seizure … ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "The Fourth Amendment tolerates additional investigation unrelated to the safe and responsible operation of the vehicle only if that investigation does not lengthen the driver's detention or is supported by reasonable suspicion of additional criminal activity." *United States v. Reyes*, 963 F.3d 482, 487 (5th Cir. 2020). "If the officer develops reasonable suspicion of such activity in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *Id.* at 487-88 (internal quotation marks omitted).

Courts look at the totality of the circumstances when "determining whether an officer had a particularized and objective basis for suspecting criminal activity." *Id.* at 488. A hunch alone is not sufficient, and the "officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* "Factors that ordinarily constitute innocent behavior may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers." *United States v. Cervantes*, 797 F.3d 326, 329 (5th Cir. 2015). "[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."

8

*Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 676, 145 L. Ed. 2d 570 (2000). Where a suspect could not clearly explain where they were going, appeared nervous, had three prior marijuana charges or convictions, and a police dog was deployed within eight to ten minutes of the start of the traffic stop, the Fifth Circuit concluded that reasonable suspicion existed and the stop was reasonably extended. *United States v. Young*, 816 F. App'x 993, 996 (5th Cir. 2020). "[A]n alert by a drug-detecting dog provides probable cause to search." *United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003).

Here, Momoh's allegations do not show a violation of a constitutional right, and Trooper Carrasco is accordingly entitled to qualified immunity. First, as to Momoh's racial profiling claim, the complaint contains only conclusory accusations of disparate treatment with no substantiating facts. (*See* D.E. 1 at 3-4; D.E. 1-1 at 3); *Bermea*, 2019 WL 13190655 at *3. The only basis for Momoh's claim in the complaint is that he was pulled over. (*See* D.E. 1 at 3-4, D.E. 1-1 at 3). He also makes the conclusory allegation that his car was compliant with Texas law, but includes no factual allegations addressing the stated purpose of the stop, which was the lack of the proper label for his window tint. (*See id.*); Tex. Transp. Code § 547.609. Mere labels and conclusions are insufficient to support a claim of racial profiling. *Bowlby*, 681 F.3d at 227. Further, there is no window label visible in Carrasco's body camera footage. (*See generally* D.E. 18-1). Accordingly, Momoh has not shown that the initial traffic stop was unjustified at its inception and has not shown a violation of his Equal Protection rights under the Fourteenth Amendment. Carrasco is entitled to qualified immunity on this claim. *Wyatt*, 718 F.3d at 502.

Second, as to Momoh's claim that Carrasco violated his Fourth Amendment rights by conducting a search of his car, the record shows that Carrasco had reasonable suspicion to utilize the police dog and probable cause to search the car after the dog gave an alert. Carrasco identified several specific facts that created reasonable suspicion, including: (1) Momoh stopping short at the beginning of the stop; (2) Momoh's evasiveness in responding to questions from the outset of the stop; (3) Momoh's statement that he had legal trouble for "anything you could name," and his 15 prior arrests; and (4) loose money in the passenger seat of Momoh's car. (D.E. 18-1 at 0:28-0:53, 3:27-4:15, 25:40-25:42). Although any of these factors individually may not establish reasonable suspicion, they were sufficient taken as a whole to reasonably warrant the use of the police dog. *Cervantes*, 797 F.3d at 329; *Reyes*, 963 F.3d at 488. Carrasco begins the search with the police dog around 13 minutes after the start of the traffic stop. (D.E. 18-1 at 12:50-16:10). Although the factors leading to reasonable suspicion are not identical, this case is analogous to *Young*, where the Fifth Circuit concluded that reasonable suspicion existed. *Young*, 816 F. App'x at 996. Finally, Carrasco had probable cause to search the interior of the vehicle after the police dog gave an alert. *Sanchez-Pena*, 336 F.3d at 444. Accordingly, Momoh has not shown that the deployment of the police dog or the subsequent interior search of his car was a violation of his Fourth Amendment rights, and Carrasco is entitled to qualified immunity on this claim. *Wyatt*, 718 F.3d at 502.

Because Momoh has not shown the violation of a constitutional right, it is unnecessary to address the second prong of the qualified immunity standard regarding whether the right was clearly established.

### III. RECOMMENDATION

Accordingly, it is recommended that Carrasco's motion for summary judgment (D.E. 18) be **GRANTED** and this cause of action be **DISMISSED**.

Respectfully submitted on September 13, 2024.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).